# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2273
_____

United States of America

*Plaintiff - Appellee*

v.

Mario Castro Covarrubias, Spanish, also known as Menon

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Southern
_____

Submitted: September 15, 2025
Filed: October 1, 2025
[Unpublished]
_____

Before SMITH, ARNOLD, and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

With the help of confidential informants, investigators learned that Mario Castro Covarrubias was coordinating large shipments of cocaine to South Dakota. He eventually pleaded guilty to conspiring to distribute a controlled substance, *see* 21

U.S.C. §§ 841(a)(1), 846, and the district court,[1] varying upwards, sentenced him to 240 months in prison. He maintains on appeal that the district court miscalculated his recommended sentencing range and imposed an unreasonable sentence. We disagree and affirm.

When calculating Covarrubias's recommended sentencing range, the district court applied a three-level enhancement because it found that Covarrubias was a manager or supervisor in criminal activity involving at least five people. *See* USSG § 3B1.1(b). "The district court's determination of a participant's role in the offense is a factual finding that we review for clear error." *United States v. Ellis*, 129 F.4th 1075, 1080 (8th Cir. 2025). We construe the terms "manager" or "supervisor" broadly. *See United States v. Gaines*, 639 F.3d 423, 428 (8th Cir. 2011).

Covarrubias emphasizes that his "role in the conspiracy was limited to phone activity" and that the government never presented evidence that he personally handed drugs to anyone or even received the proceeds of cocaine distribution. According to Covarrubias, he acted merely like "a customer service representative answering phone calls" and not like a manager or supervisor in the conspiracy.

We discern no clear error in the district court's determination that Covarrubias's role was more extensive than he insists. Covarrubias organized and carefully oversaw two separate shipments of cocaine totaling nearly 67 kilograms—an amount worth over two million dollars—from South America to Mexico and into the United States. And when the first shipment did not go as planned, he assured a confidential informant that the second would fare better because he would use couriers he had experience with. Organizations (whether acting illegally or not) do not typically entrust multi-million dollar decisions to underlings.

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

We are not left with a definite and firm conviction that the district court erred in determining that Covarrubias was no mere bottom-rung customer-service representative but instead exercised significant managerial and supervisory authority.

Covarrubias's next assignment of error requires some explanation. When discussing the sentence it would impose, the district court observed that Covarrubias's criminal history was in the least severe category. The court further remarked, though, that it wasn't sure the lack of criminal history accurately reflected the likelihood that Covarrubias would reoffend: He had lived most of his life outside the country, so his true criminal history was unknown. With a total offense level of 32 and a criminal history category of I, Covarrubias's recommended sentence under the Guidelines was 121–151 months' imprisonment. He contends that since the court sentenced him to 240 months, it "effectively enhanced," as he puts it in his brief, his criminal history category to a category VI, since 240 months falls within the range prescribed for offenders in that category. We reject this contention because the district court never purported to adjust Covarrubias's criminal-history category. It merely varied upward and imposed a sentence above the Guidelines range, largely because of the massive quantity of cocaine Covarrubias trafficked, much of which the Guidelines calculation likely didn't capture. There was no error here.

Covarrubias asserts that the district court also improperly speculated that he was "higher up in this drug conspiracy" than other coconspirators the court had already sentenced. The court was merely pointing out that Covarrubias had supplied those coconspirators with drugs, an observation the record supported. A government agent testified at sentencing that Covarrubias was the drug supplier, and an unobjected-to paragraph of the presentence report stated much the same. The district court did not err.

For his next contention, Covarrubias asserts that the district court abused its sentencing discretion when it mentioned the lengthy sentences it had imposed on two

of his coconspirators. We see no abuse of discretion. "In sentencing, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Hogue*, 66 F.4th 756, 764–65 (8th Cir. 2023). A relevant sentencing consideration is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). Though we've said many times that § 3553(a)(6) refers to national disparities and not differences among coconspirators, we've also recognized that the sentences imposed on coconspirators can be a relevant consideration in fixing a sentence. *See United States v. Castillo*, 117 F.4th 1021, 1025 (8th Cir. 2024). And so even though § 3553(a)(6) "does not require district courts to consider sentencing disparity among co-defendants, . . . it also does not prohibit them from doing so." *See United States v. Kluger*, 722 F.3d 549, 568 (3d Cir. 2013); *see also United States v. Peterson*, 839 F. App'x 7, 11 (7th Cir. 2020) (citing *Gall v. United States*, 552 U.S. 38, 55–56 (2007)).

Finally, Covarrubias maintains that the district court failed to give proper weight to his "safety concerns as a motivation for participating in the conspiracy." The district court acknowledged that people in Mexico and Guatemala are often forced into the drug trade, but it expressly found that "there hasn't been any evidence to show that that coercion or those threats happened to make [Covarrubias] get into the drug trade business." We cannot fault the court for giving little to no weight to Covarrubias's unsupported allegations of coercion, and we think that on this record the district court amply justified the 240-month sentence it imposed.

Affirmed.

_____